IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**APRIL NIDA; CURTIS STULL; JAMIE GRACE;**                                    **PLAINTIFFS**
**LOGAN SHEPPARD; TIMOTHY STONE;**
**ERIC GRACE; TEZ MARIO A.D. DAVIS,**
*Individually and on Behalf of All Persons Similarly*
*Situated as Members of the Collective as Permitted*

**v.**                                  **CIVIL ACTION NO. 1:23-cv-365-TBM-RPM**

**TACTICAL FORCE, LLC;**
**PRESTON RENARDO JOHNSON,** *Individually*;
**BRANDON LEE,** *Individually*                                              **DEFENDANTS**

## ORDER DENYING MOTION TO COMPEL ARBITRATION

Plaintiffs—April Nida, Curtis Stull, Jamie Grace, Logan Sheppard, Timothy Stone, Eric Grace, and Tez Mario A.D. Davis—are all current or former security guards for Defendant Tactical Force, LLC, a Mississippi company that contracts to third parties for security services. [21], p. 1. They allege violations of the Fair Labor Standards Act and argue that Tactical Force failed to pay the Plaintiffs for all of the overtime hours they worked, failed to pay them at the correct overtime rate of pay, and improperly deducted taxes from the Plaintiffs' wages. [8], p. 2.

Defendants Tactical Force, LLC, and Preston Renardo Johnson—who is Tactical Force's owner and sole member—filed a Motion to Compel Arbitration [20] based on an arbitration clause within the Defendants' Employee Handbook. Defendant Brandon Lee—a Tactical Force employee who the Plaintiffs allege scheduled their shifts and supervised them—subsequently joined the Motion. [24]. While the Employee Handbook given to the Plaintiffs prior to their employment contained an arbitration provision, that provision is unenforceable due to illusory language contained in the Handbook. Accordingly, the Motion to Compel Arbitration [20] is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

When the Plaintiffs commenced their employment with Tactical Force, they were given three onboarding documents: an Employment Contract Agreement [20-1], Employee Handbook [20-2], and Acknowledgement of Receipt of Employee Handbook and At-Will Employment Agreement ("Acknowledgement") [20-3]. The Agreement [20-1] outlines general policies of employment, such as termination, pay, vacation and leave, and governing law. The Handbook contains the arbitration clause in Provision 1.6, which states that if good faith resolution attempts fail, "any disputes between you and the Company shall be submitted to binding arbitration." [20-2], p. 5. Adjacent to the arbitration provision, the Handbook also states in Provision 1.3 that Tactical Force has "the express right to change, revise, revoke, modify, amend, add to, or otherwise vary the terms of this Handbook . . ." *Id*. at p. 4. Additionally, Tactical Force's "interpretation of anything contained within this Handbook will govern and be absolute." *Id*. at p. 5. In the Acknowledgement [20-3], the employees agreed "to abide by the policies and procedures contained in the handbook" and consented to their at-will employment status. [20-3], p. 1. The Acknowledgement also states: "I understand that the Company reserves the right to make changes to its policies, procedures, benefits, and interpretations of the aforementioned at any time at its discretion. However, the at-will employment agreement can be modified only in the manner specified above." *Id*.

Pursuant to the arbitration provision in the Employee Handbook, the Defendants filed the instant Motion to Compel Arbitration [20] on June 28, 2024. The Plaintiffs filed their Response [22] on July 12, 2024, but the Defendants failed to file a rebuttal. As a result, the Court entered an Order to Show Cause [25] on August 12, 2024, requiring the Defendants to show cause by August 26, 2024, why no rebuttal addressing the Plaintiffs' arguments was filed. The Defendants were

warned that "[f]ailure to respond to this Order may result in the denial of the pending Motion to Compel Arbitration without further notice." [25]. In accordance with the Court's Order [25], the Defendants timely filed a Show Cause Response [26] asserting that "there are no additional facts or law that [the Defendants] can advance that will be helpful to the Court . . ." [26], p. 1.[1] Unsatisfied by this Response, the Court entered a Second Order to Show Cause [28] informing the Defendants that their "explanation leaves much to be desired." [28], p. 1. The Court reasoned that, because the Defendants declined to address the facts and law cited by the Plaintiffs, and did not advance contrary legal authority, "the Defendants are in danger of conceding their Motion." *Id*. The Court ordered the Defendants to show cause by September 13, 2024, as to why the "Motion to Compel Arbitration [20] should not be denied in light of the Plaintiffs' positions set forth in their Response in Opposition [22] and accompanying Memorandum [23]." *Id*. at p. 2. The Court warned that failure to show cause "may result in the denial of the pending Motion to Compel Arbitration without further notice." *Id*.

On September 10, Defendant Brandon Lee filed a Reply [29] in support of the Motion to Compel Arbitration—which Tactical Force and Johnson joined [32]. Defendants Tactical Force and Johnson timely responded [31] to the Second Show Cause Order [28], arguing that the Employment Agreement [20-1] signed by the Plaintiffs incorporates the arbitration provision contained in the Employee Handbook [20-2] and makes the parties subject to binding arbitration under the Federal Arbitration Act ("FAA"). [20], p. 1. The Motion to Compel is now fully briefed for this Court's review.

---

[1] The same day, Defendant Brandon Lee joined [27] the Response to the Show Cause Order.

## II. STANDARD OF REVIEW

"[T]he Fifth Circuit has never discussed the appropriate standard for a district court to apply when considering a motion to stay or compel arbitration." *Rain CII Carbon, LLC v. ConocoPhillips Co.*, No. Civ. A. 09-4169, 2010 WL 148292, at *3 (E.D. La. Jan. 11, 2010)). But, "[t]he majority of other circuits apply a summary judgment-like standard, giving deference to the claims of the non-movant." *Id.* (citing *Clutts v. Dillard's, Inc.*, 484 F. Supp. 2d 1222, 1224 (D. Kan. 2007)); *see Grant v. House of Blues New Orleans Restaurant Corp.*, No. Civ. A. 10-3161, 2011 WL 1596207, at *2-4 (E.D. La. Apr. 27, 2011) (collecting cases using summary judgment standard on motion to compel arbitration). "The courts that use the summary judgment standard of [Federal Rule of Civil Procedure] 56 have found it appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Grant*, 2011 WL 1596207, at *3 (citations omitted); *see* 9 U.S.C. § 4 (a district court should not order arbitration unless it is "satisfied that the making of [an] arbitration agreement . . . is not in issue").

## III. DISCUSSION AND ANALYSIS

When the Defendants initially declined to file a rebuttal to the Plaintiff's Response [22] to the instant Motion, the Court entered two Show Cause Orders [25], [28], the latter of which warned the Defendants that they were "in danger of conceding their Motion." [28], p. 1. Even though a Reply [29] was subsequently filed, that danger was nearly realized. The Defendants have fallen short of fully supporting their own arguments—or advancing relevant, contrary legal authority in rebuttal to the Plaintiffs' arguments. Regardless of this inadequacy, the Court is persuaded by the Plaintiffs' argument and finds that the illusory language used by the Defendants renders the arbitration provision nonbinding.

## A. The Defendants Come Close to Waiving their Arguments in Support of Arbitration

"The Fifth Circuit has long held that issues not sufficiently briefed are waived." *Grimes v. Santander Consumer USA*, No. 3:22-cv-1933-X-BH, 2023 WL 5022276, at *5 n.6 (N.D. Tex. Jul. 13, 2023), *report and recommendation adopted*, No. 3:22-cv-1933-X-BH, 2023 WL 5021786 (N.D. Tex. Aug. 5, 2023) (citing *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001) ("Generally speaking, a defendant waives an issue if he fails to adequately brief it."))._[2]_ And, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived and it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *United States v. Brown*, 819 F.3d 800, 829 (6th Cir. 2016) (citations omitted); *see Grimes*, 2023 WL 5022276, at *5 n.6 ("The role of a court is 'not to create arguments for adjudication' or 'raise them like a Phoenix from the ashes,' but 'to adjudicate the arguments with which it is presented.'") (citing *In re Cao*, 619 F.3d 410, 435 (5th Cir. 2010)). Thus, "[t]o avoid waiver, a party must identify relevant legal standards and any relevant Fifth Circuit cases." *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (holding that claims were inadequately briefed and therefore waived).

In support of the Motion to Compel Arbitration [20], the Defendants' Memorandum [21] merely asserts—without providing sufficient arguments, or citations to relevant caselaw—that the arbitration provision contained in the Employee Handbook was incorporated by the Employment Agreement. [20], p. 1. In their five-page Memorandum [21], the Defendants fail to provide any

---

[2] *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) ("Where analysis is so deficient, this court has considered the issue waived for inadequate briefing."); *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 739 n.9 (5th Cir. 1993) (failure to sufficiently brief issue constitutes waiver of issue); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."); *see also United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) ("This failure to develop the relevant argument effectively represents a waiver of the point.").

5

authority in support of their argument that "[t]he Employment Agreement clearly incorporates the policies and procedures and provisions in the Employee Handbook as part of the Employment Agreement." [21], p. 3. Rather, the Defendants cite to only a few generally applicable cases concerning arbitration agreements under the FAA. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); and *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985).

The Plaintiffs timely filed their Response [22] in opposition arguing that, by its express terms, the Employee Handbook is not a contract and that there is no arbitration clause for this Court to enforce. Despite the persuasive arguments raised by the Plaintiffs, the Defendants decided not to file a rebuttal addressing these arguments. As a result, the Court entered its first Order to Show Cause [25] directing the Defendants to either inform the Court whether the Motion to Compel Arbitration was withdrawn, or to show cause why no rebuttal was filed. In Response [26] to the Order to Show Cause, the Defendants claimed "[t]hat there are no additional facts or law that [Tactical Force] and Johnson can advance that will be helpful to the Court . . ." [26], p. 1. The Defendants also explained that "the facts and law set forth in the Motion to Compel Arbitration [20] are fairly clear and [that] . . . the plaintiffs knowingly and intelligently entered into an employment arrangement with the understanding that disputes would be resolved by arbitration . . ." [26], p. 1. Given this unsatisfactory Response, the Court entered a Second Order to Show Cause [28]. There, the Court explained that "it appears Defendants are declining to address any of the facts and law submitted by the Plaintiffs, and Defendants are not advancing any contrary legal authority." [28], p. 1. The Court again warned that "without more, the Defendants are in danger of conceding their Motion." *Id.* The Defendants timely filed a Response [31] to the

6

Second Order to Show Cause, but it wholly fails to address the instructions provided in both Orders to Show Cause. Rather than addressing the facts and law cited by the Plaintiffs, the Defendants instead "respectfully request the Court accepts the pleadings filed by Defendant Brandon Lee on September 10, 2024, [29] and [30] as the Defendants' rebuttal and memorandum supporting the rebuttal." [31], p. 1. It appears from their Response [31], that these Defendants recognize their failure to show cause, as they "apologize to the Court for failing to submit a timely rebuttal." *Id.*

Defendant Brandon Lee's Rebuttal [29] and supporting Memorandum [30], which were filed on behalf of all Defendants, save the Motion to Compel [20] from being dismissed as waived. "[T]he parties [must] frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *See Greenlaw v. United States*, 554 U.S. 237, 243, 128 S. Ct. 2559, 171 L. Ed. 2d 399 (2008); *Cosgun v. Seabourn Cruise Line Ltd. Inc.*, 666 F. Supp. 3d 1270, 1278 (S.D. Fla. 2023) ("It's typically not [the Court's] role to make the parties' arguments for them.") (citation omitted), *appeal dismissed*, No. 23-11396, 2023 WL 4112993 (11th Cir. Jun. 22, 2023). The Court recognizes that there is a strong preference in federal court "for resolving disputes on their merits," rather than on procedural grounds such as waiver. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010).

### B.  The Parties Do Not Have a Binding Arbitration Agreement

Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . ." 9 U.S.C. § 2. The FAA gives arbitration agreements the same force and effect as other contracts. *Id.* And district courts have the authority to decide whether parties have agreed to arbitrate under a written agreement. 9 U.S.C. § 4. "To determine whether the parties have agreed to arbitrate [a] claim, [courts] ask '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question

falls within the scope of that arbitration agreement.'" *Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 196 (5th Cir. 2015) (citing *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002)).

In resolving the first prong of the FAA analysis, the Court questions "whether the parties entered into any arbitration agreement at all." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis removed). Answering that question "turns on state contract law." *Id.* at 202 (citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)); *see Matter of Willis*, 944 F.3d 577, 579-80 (5th Cir. 2019) (applying Mississippi contract law to determine whether the parties created a valid contract to arbitrate); *Seal v. S. Energy Homes, Inc.*, No. 1:20-cv-190-HSO-JCG, 2021 WL 1427671, at *4 (S.D. Miss. Jan. 26, 2021) (same).

While a "strong federal policy favoring arbitration applies to the scope of an arbitration agreement, 'the policy does not apply to the initial determination whether there is a valid agreement to arbitrate.'" *Auto Parts Mfg. Mississippi, Inc.*, 782 F.3d at 197 (quoting *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004)); *see also Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002). Instead, "these are separate inquiries." *Auto Parts Mfg. Mississippi, Inc.*, 782 F.3d at 197. Thus, the Court must first decide whether, under Mississippi law, there is a valid arbitration agreement between the parties, and only if it can answer that question in the affirmative, may the Court proceed to the second inquiry regarding scope. *Id.*

Here, the Defendants assert that the Employment Agreement incorporates the Employee Handbook's arbitration provision and subjects the parties to binding arbitration. [20], p. 1.[3] The

---

[3] Under Mississippi law, "for an incorporation by reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Woodruff v. Thames*, 143 So. 3d 546, 554-55 (Miss. 2014) (quoting 17A C.J.S. Contracts § 402 (2011)).

8

Plaintiffs do not dispute that Mississippi contract law governs the enforceability of their purported arbitration agreement. But they do dispute that they agreed to arbitrate in the first place. According to the Plaintiffs, the purported arbitration agreement is nonbinding on three grounds: (1) the Handbook [20-2] and Acknowledgement [20-3] contain disclaiming language rendering the arbitration provision nonbinding; (2) the Defendants made an illusory promise; and (3) the terms of the arbitration provision are unconscionable.[4] [23], pps. 3, 6-7. Because the Court finds that the language in the Handbook makes the arbitration agreement illusory, the Court need not reach the Plaintiffs' argument regarding the use of disclaiming language.

An illusory promise is one that attempts to create a contract, but fails, because it is not supported by consideration. *See Marshall Durbin Food Corp. v. Baker*, 909 So. 2d 1267, 1274-75 (Miss. Ct. App. 2005). And where there is no consideration, there is no contract at all. *Id.* The Mississippi Supreme Court has explained:

> If what appears to be a promise is an illusion, there is no promise. . . . By the phrase 'illusory promise' is meant words in promissory form that promise nothing; they do not purport to put any limitation on the freedom of the alleged promisor, but leave

---

[4] The Plaintiffs argue, in the alternative, that the purported arbitration agreement is unconscionable because it: (1) allows the Defendants to litigate intellectual property claims but restricts all of the Plaintiffs' claims to arbitration, and (2) the arbitration provision is silent on fee-sharing and costs. First, "a[n] asymmetric exception so limited in scope does not make an arbitration clause unconscionable." *Daniels v. Va. College at Jackson*, 478 F. App'x 892, 893 (5th Cir. 2012) (citing *Sawyers v. Herrin–Gear Chev. Co.*, 26 So. 3d 1026, 1035 (Miss. 2010)). "[A]n arbitration clause containing an option by the drafter to use judicial or nonjudicial relief to enforce a contract, while requiring the draftee to resort exclusively to arbitration, is not unconscionable." *Green Tree Servicing, LLC v. McGee*, No. 305-cv-703-HTW-LRA, 2010 WL 1141138, at *3 (S.D. Miss. Mar. 22, 2010). The Court finds that although the arbitration provision in the Handbook allows the Defendants to file in court for intellectual property claims but restricts the Plaintiffs to arbitration for all claims, this is not unconscionable.
Second, the United States Supreme Court has explicitly rejected the argument that an arbitration agreement's silence with respect to arbitration costs and fees makes the agreement unenforceable. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 82, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000). And for a party to invalidate an arbitration agreement "on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. The plaintiffs have not met that burden. In fact, they argue only that they fear that they may have to pay for the arbitration. [23], p. 8. Absent facts supporting that fear, "[t]he 'risk' that [a party] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Randolph*, 531 U.S. at 91. For these two reasons, the arbitration provision is not unconscionable.

> his future action subject to his own future will, just as it would have been had he said no words at all.

*Krebs ex rel. Krebs v. Strange*, 419 So. 2d 178, 182–83 (Miss. 1982) (citing 1 Corbin, *Contracts*, § 145 (1 vol. ed. 1952)). The Plaintiffs argue that any purported contract formed by the Handbook is illusory because language found in the Handbook allows the Defendants to alter or rescind the Handbook's terms at any time, and it gives the Defendants the unilateral authority to interpret the terms. The Court agrees, as Provision 1.3 of the Handbook states:

> The Company may, at various points in time, and in our sole and exclusive discretion, change the terms of this Handbook. We have the express right to change, revise, revoke, modify, amend, add to, or otherwise vary the terms of this Handbook . . .

[20-2], p. 4. And Provision 1.5 right below it provides that "[t]he Company's interpretation of anything contained within this Handbook will govern and be absolute," and gives the Defendants the sole power to interpret the Handbook. *Id.* at p. 5. Additionally, the Acknowledgement signed by the Plaintiffs after reading the Handbook states, "I understand that the Company reserves the right to make changes to its policies, procedures, benefits, and interpretations of the aforementioned at any time at its discretion."[5] *See* [20-3]. While the Defendants have attempted to bind the Plaintiffs to the arbitration provision by using typical contracting language like "shall," the Defendants have not bound themselves. [20-2], p. 5. "In essence, the promise made by the [Defendants] promised nothing and was, therefore, illusory." *Littleton v. State*, 3 So. 3d 760, 762 (Miss. Ct. App. 2008).

The Defendants, in their Reply brief [30], rely on *Caldwell v. Hydrovac Indus. Servs., Inc.*, No. 1:12-cv-272-SA-DAS, 2014 WL 1285949 (N.D. Miss. Mar. 31, 2014). In that case, the court

---

[5] The Acknowledgement [20-3], which is a separately docketed exhibit in the record, also immediately follows the Handbook [20-2] itself. It appears, then, that when the Acknowledgement references "the aforementioned," this encompasses the policies set forth in the Handbook. [20-2], p. 24.

found an arbitration agreement did not lack consideration, and was not illusory, where the "employer does not have the option to revoke the arbitration clause altogether, only 'clarify, amend and/or supplement the information contained in the Employee Handbook.'" *Id.* at *4. That, however, is not the case here, as the Defendants do have the power to "revoke" the terms of the Handbook. [20-2], p. 4. And although not at issue in *Caldwell*, these Defendants have the "sole" and "absolute" power to interpret "anything contained within this Handbook" *Id.* at p. 5. It is clear to this Court that the Defendants reserved much more power than the Defendants in *Caldwell*, and in doing so, they have "promise[d] nothing" and "do not purport to put any limitation on [their] freedom." *Krebs*, 419 So. 2d at 182-83 (citing 1 Corbin, *Contracts*, § 145 (1 vol. ed. 1952)).

To be sure, the Court is not making a finding that employers cannot include policies and procedures like the ones in this particular Handbook. In fact, employee handbooks are a place for policies and procedures, and there is nothing inherently wrong with companies reserving the right to change those policies and procedures. But, "[a]n arbitration agreement is a contract." *Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 625 (5th Cir. 2006). When a company wishes to bind its employees to arbitrate disputes, it should do so in a contract—one that, perhaps more importantly, also binds itself. Instead, when an arbitration agreement is buried in an employee handbook alongside illusory language allowing the employer to revoke all the terms contained in the handbook and to interpret those terms at its whim, no one is bound.

Courts around the country have found arbitration provisions unenforceable where the arbitration agreement was subject to an illusory promise. *See Dumais v. American Golf Corp.*, 299 F.3d 1216, 1217-19 (10th Cir. 2002) (holding that an arbitration provision was illusory where the employee handbook contained the arbitration provision, but the acknowledgment form retained the employer's right to change any policy except at-will status and did not make an exception for the

arbitration provision) (collecting cases from the Fourth, Sixth, and Seventh Circuits); *Trumbull v. Century Marketing Corp.*, 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998) (finding an arbitration agreement contained in an employee handbook to be unenforceable where the handbook included a unilateral provision allowing the employer "to modify, augment, delete, or revoke any and all policies, procedures, practices and statements contained in this Handbook at any time, without notice").[6]

And although the Mississippi Supreme Court's *Krebs* opinion mentioned above does not specifically address an arbitration clause, the court found an insurance company's promise "clearly illusory" where the contract mandated that the insured agree to a contract modification, or the company would not renew the policy. *Krebs ex rel. Krebs v. Strange*, 419 So. 2d 178, 182 (Miss. 1982). But that same contract term also stated, "if you agree to this modification, then we may or may not make an offer to renew this insurance policy." *Id*. Thus, where the policy purported to bind the parties, but did not really bind the insurance company at all, the Mississippi Supreme Court held that such a promise was unenforceable.

Here, like in *Krebs*, the Defendants can "change, revise, revoke, modify, amend, add to, or otherwise vary" the terms in the Handbook, and they can do so "at any time at [their] discretion." [20-2], p. 4; [20-3], p. 1; *see Krebs ex rel. Krebs*, 419 So. 2d at 182. Additionally, the terms are subject to the Defendants' "absolute" interpretation. [20-2], p. 5. This illusory language renders Provision 1.6—the arbitration provision—unenforceable, unless the Defendants in some way restricted their unilateral ability to change and interpret it. They clearly did not, as the arbitration provision is not

---

[6] *See also Gourley v. Yellow Transp., LLC*, 178 F. Supp. 2d 1196, 1202 (D. Colo. 2001) (finding an arbitration agreement illusory when the defendant company "reserve[d] the right to modify, supplement, or delete provisions of [the] handbook" that contained an arbitration agreement); *Phox v. Atriums Management Co, Inc.*, 230 F. Supp. 2d 1279, 1282-83 (D. Kan. 2002) (finding an arbitration agreement illusory when it was contained in an employee handbook that gave the defendant the right to modify or cancel its provisions at its sole discretion).

set apart from those other illusory provisions in the Handbook. Instead, the arbitration provision is found in Section 1, along with Provisions 1.3 and 1.5—those which give the Defendants the power to change or revoke any of the terms in the Handbook at their own discretion and interpret them as they see fit. [20-2], pps. 4-5. Moreover, the Acknowledgement—which also allows the Defendants to make changes to the terms at their discretion—fails to make an exception or otherwise exempt the arbitration provision from the Defendants' illusory promise. *Id.* at p. 4; [20-3], p. 1. In fact, the Acknowledgement does not even mention the arbitration provision. Because the Defendants have reserved the unilateral right to revoke, change, and interpret the arbitration provision, just like any other term in the Handbook, the promise to arbitrate is an illusory promise—meaning the Defendants really have made no promise at all. The arbitration provision within the Employee Handbook is therefore unenforceable, so there is no valid agreement to arbitrate.

### IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Tactical Force, LLC, Preston Renardo Johnson, and Brandon Lee's Motion to Compel Arbitration [20] is DENIED.

THIS, the 31st day of March, 2025.

                                              **TAYLOR B. McNEEL**
                                              **UNITED STATES DISTRICT JUDGE**